## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. <u>1:15-cv-2436</u>

JEANNE WALKER,

        Plaintiff,

v.

TELLURIDE LODGING, LLC, d/b/a TELLURIDE ALPINE LODGING,
FRANK RUGGERI,
LARRY MALLARD,
MARK WESTMAN,
YVONNE HATTON,
SARAH FELTON, and
KATE STOKES,

        Defendants.

---

## COMPLAINT AND DEMAND FOR JURY TRIAL

---

Plaintiff Jeanne Walker, by her attorneys Mary Jo Lowrey and Sarah J. Parady of Lowrey Parady, LLC, files this Complaint and Demand for Jury Trial against Defendants Telluride Lodging, LLC, d/b/a Telluride Alpine Lodging; Frank Ruggeri; Larry Mallard; Mark Westman; Yvonne Hatton; Sarah Felton; and Kate Stokes, and complains as follows:

### INTRODUCTION

1.   Jeanne Walker worked for Telluride Alpine Lodging for years as the Property Manager for the Mountain Side Inn.  In summer of 2013, Ms. Walker needed a brief medical leave for a double knee surgery.  She requested leave under the Family and Medical Leave Act ("FMLA"), which was approved.  However, one week later, TAL's

1

owners and managers decided to demote Ms. Walker, reduce her pay, and move her to another property because she was taking medical leave and because they believed, without a shred of evidence, that she would be unable to perform her position upon her return from leave.  Moreover, TAL moved Ms. Walker to a property they knew was slated to close in the near future because of her leave and because of their ageist belief, also without any supporting evidence, that Ms. Walker would soon retire anyway.  As a result, Ms. Walker lost her job despite being fully cleared and able to return to her position before the expiration of her FMLA leave.  As a 69-year-old woman, she has been unable to find full time employment for over a year and a half, and may never work full time again due to Defendants' actions. The former Property Manager of the closing property, a younger employee who had not taken medical leave, was given her job at the Mountain Side Inn and allowed to remain with the company.  Ms. Walker brings claims for violation of the Family and Medical Leave Act ("FMLA"), the Americans with Disabilities Act ("ADA"), the Age Discrimination in Employment Act ("ADEA"), and the Colorado Anti-Discrimination Act ("CADA").

## **PARTIES**

2.   Plaintiff Jeanne Walker is, and was at all times material hereto, a citizen of the United States of America and the State of Colorado.

3.   Ms. Walker was employed by Telluride Lodging, LLC, d/b/a Telluride Alpine Lodging (hereinafter "TAL" or "Telluride Alpine Lodging") from about August of 2009 to April 6, 2014.

4.   Ms. Walker is currently 69 years old.   Her date of birth is July 21, 1946.

5.   Ms. Walker is disabled under the Americans with Disabilities Act, in that she suffers from diagnosed lateral compartment degenerative joint disease, a condition that affects her musculoskeletal function.

6.   Aside from a brief medical leave for surgery and recuperation, Ms. Walker was able to satisfactorily perform her job at TAL, including all essential functions of her position, without accommodation at all relevant times, and was qualified for her position.

7.   Defendant Telluride Lodging, LLC, d/b/a Telluride Alpine Lodging ("TAL"), is a Colorado limited liability company with a principal place of business at 324 W. Colorado Ave., Telluride, CO 81435.

8.   TAL is a property management company managing roughly 400 properties in the Telluride area.

9.   At all times material hereto, TAL was an employer in the State of Colorado within the meaning of 29 U.S.C. § 630(b), 29 U.S.C. § 2611(4), 42 U.S.C. § 12111(5)(A), and C.R.S. § 24-34-401(3).

10. At all relevant times, TAL has employed more than 50 employees within 75 miles of its principal place of business, all within the state of Colorado.

11. Defendant Frank Ruggeri is an individual residing in the State of Colorado. At all relevant times, Defendant Ruggeri was a co-owner of TAL.

12. Defendant Larry Mallard is an individual residing in the State of Colorado.  At all relevant times, Defendant Mallard was a co-owner of TAL.

13. Defendant Mark Westman is an individual residing in the State of Colorado. At all relevant times, Defendant Westman was a co-owner of TAL.

14. Defendant Yvonne Hatton is an individual who resided in the State of Colorado during the events set forth in the Complaint and has minimum contacts with the state of Colorado including as described herein.  Upon information and belief, Defendant Hatton presently resides in the State of Arizona.  At all relevant times, Defendant Hatton was Human Resources Director of TAL.

15. Defendant Sarah Felton is an individual residing in the State of Colorado.  At all relevant times, Defendant Felton was Operations Manager of TAL and Ms. Walker's second-level supervisor.

16. Defendant Kate Stokes is an individual residing in the State of Colorado.  At all relevant times, Defendant Stokes was Guest Services Supervisor of TAL and Ms. Walker's direct supervisor.

## JURISDICTION and VENUE

17. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331, and 28 U.S.C. § 1343(a)(3) and (4), which grant original jurisdiction to the Federal District Court in actions which arise under federal civil rights laws.  Specifically, this Court has jurisdiction pursuant to the enforcement provisions of the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq.*, the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*, and the Colorado Anti-Discrimination Act ("CADA"), C.R.S. § 24-34-401 *et seq.*  This Court has jurisdiction over Ms. Walker's state-law claims pursuant to 28 U.S.C. § 1367.

18. The unlawful employment practices alleged below were committed within the State of Colorado.  Accordingly, venue lies in the United States District Court for the District of Colorado pursuant to 28 U.S.C. § 1391(b)(2).

## ADMINISTRATIVE EXHAUSTION

19. Ms. Walker timely filed a Charge of Discrimination with the Colorado Civil Rights Division ("CCRD"), Charge No. E20150032, and the Equal Employment Opportunity Commission ("EEOC"), Charge No. 32A-2014-00465, on July 12, 2014. Ms. Walker also filed an Intake Questionnaire containing all information needed to process her Charge with the CCRD on April 26, 2014.

20. Ms. Walker received a Notice of Right to Sue from the CCRD which was sent on August 12, 2015.  She received a Notice of Right to Sue from the EEOC on September 14, 2015.

21. Ms. Walker has exhausted all administrative remedies and this action is timely filed.

## GENERAL ALLEGATIONS

22. Ms. Walker began her employment with TAL in August of 2009.  Within several months, she was promoted to Property Manager of the Mountain Side Inn in Telluride, CO, a condominium building.

23. At all relevant times, Ms. Walker worked full-time.

24. With 82 units, the Mountain Side Inn is the largest property managed by TAL.

25. TAL also manages a Telluride "bed & breakfast" called the Aspen Street Inn, which has 17 rooms.

26. For the entire time Ms. Walker was employed by TAL, it was common knowledge that the Aspen Street Inn was slated for remodeling or demolition and would eventually close.

27. In approximately 2010, TAL hired a couple, Heather and Bruce White, to manage the Aspen Street Inn.

28. Upon information and belief, Ms. White was approximately 52 years old and Mr. White was approximately 55.  Also upon information and belief, both are nondisabled, were not regarded as disabled, did not request medical leave, and did not request accommodation for any disability.

29. Ms. White became the Property Manager for the Aspen Street Inn, supervising Mr. White, who was the Guest Services Manager at the Inn.  Mr. White also served as Property Manager for a third property, the Manitou Lodge.

30. Upon information and belief, the Whites were informed at the time of their respective hires that their positions would end when the Aspen Street Inn closed.

31. Ms. Walker was an excellent employee.  She managed her property efficiently and effectively, received frequent compliments from guests, and supervised several employees.

32. Ms. Walker was directly supervised by Guest Services Supervisor Kate Stokes, who worked at TAL's business office at 324 W. Colorado Ave.

33. Upon information and belief, throughout Ms. Walker's employment, she was the oldest person employed by TAL.

34. Years before she began her employment at TAL, Ms. Walker's doctor informed her that she was beginning to lose cartilage in her knees, a condition diagnosed as lateral compartment degenerative joint disease.

35.  This condition made Ms. Walker's knees progressively less stable, and required her to give up activities such as hiking and cross-country skiing to avoid injury.

36. Upon information and belief, in spring of 2013, the owners of the Aspen Street Inn informed TAL that they would be closing that property in April of 2014.

37. On or about June 14, 2013, Ms. Walker's physician told her she needed to have knee replacement surgery on both knees, or she might lose her ability to walk.

38. Shortly after receiving this news, Ms. Walker met with Ms. Stokes and Operations Director Sarah Felton (her second-level supervisor) to inquire about taking a medical leave for surgery.

39. Ms. Walker had not previously taken any sick leave within the 12 months prior to her request.

40. Ms. Walker was qualified for FMLA leave and had not used any of her 12-week annual entitlement.

41. Ms. Walker suffered from a serious health condition, in that her loss of cartilage was a physical condition that required a 13-day inpatient stay for knee replacement surgery.  Her condition and the resultant surgery also led to a period of incapacity of more than three consecutive, full calendar days, followed by a subsequent period of incapacity during which she was treated two or more times by a health care provider in the first 30 days (with her first visit occurring within seven days of her

surgery), and also subject to a regimen of continuing treatment (including physical therapy) under the supervision of a health care provider.

42. Upon information and belief, Ms. Hatton and TAL's owners were informed of Ms. Walker's request for FMLA leave.

43. As soon as Ms. Walker informed TAL of her need for surgery, TAL's owners and managers, including Defendants Ruggeri, Mallard, Westman, Hatton, Felton, and Stokes, began to perceive her as disabled.

44. Defendants Ruggeri, Mallard, Westman, Hatton, Felton, and Stokes believed that Ms. Walker could no longer perform the essential functions of her position because of a disability.

45. Defendants Ruggeri, Mallard, Westman, Hatton, Felton, and Stokes believed that Ms. Walker could no longer walk or climb stairs.

46. Defendants' belief was incorrect. Despite her knee condition, Ms. Walker was able to walk around the property, go up and down the stairs, and to complete all of her job duties until the date her surgery leave began.

47. On or about July 11, 2013, Ms. Hatton provided Ms. Walker with an FMLA Designation Notice and Notice of Eligibility.

48. On or about July 22, 2013, Ms. Walker's physician completed an FMLA certification stating that her estimated period of incapacity for the knee surgery would be August 13 to November 13, 2013, with an August 13, 2013 surgery date.

49. On or about July 23, 2013, Ms. Walker provided her doctor's certification to Ms. Hatton along with a leave request form in which she requested eight weeks of full-

time leave, from August 13 to October 13, 2013, followed by four weeks of intermittent leave, through November 13, 2013.

50. That same day, Ms. Hatton signed off on the form Ms. Walker had completed, noting that the leave was approved.

51. Ms. Felton, Ms. Stokes, and, upon information and belief, TAL's owners were informed that Ms. Walker's leave had been approved.

52. One week later, on or about July 31, 2014, Ms. Felton came into Ms. Walker's office to meet with her.

53. Ms. Felton informed Ms. Walker that she was being demoted to Senior Guest Services Manager effective the following day (August 1, 2014).

54. Ms. Felton explained that TAL needed Heather White to "fill in" for Ms. Walker while she was on medical leave, resulting in TAL's decision to demote Ms. Walker.

55. Ms. Felton also informed Ms. Walker that her pay was being reduced from a $40,000.00 salary to an hourly rate of $16.00, or a reduction of roughly $6,720.00 per year.

56. Ms. Felton also mentioned that Ms. Walker would likely be reassigned to the Aspen Street Inn upon her return from medical leave.

57. Upon information and belief, Defendants Ruggeri, Mallard, Westman, Hatton, Felton, and Stokes all conferred regarding Ms. Walker's demotion and participated in the decision to demote her and reduce her pay.

58. Ms. Walker was shocked and told Ms. Felton that the demotion represented a large loss of income for her.

9

59. Ms. Felton responded that the company had made a "business decision" which was not up for reconsideration.

60. Ms. Felton also emphasized that there were no problems with Ms. Walker's work and that she had not done anything wrong.

61. Defendants' sole reasons for their "business decision" were Ms. Walker's request for medical leave, their erroneous perception that she was unable to perform the essential functions of her position due to a disability, and their ageist belief that she was about to retire.

62. Rather than lose her job entirely, Ms. Walker signed a form reflecting the demotion and pay loss.

63. Ms. Walker was instructed to continue working at the Mountain Side Inn, but for her new, lower rate of pay, until her surgery.

64. In the meantime, Ms. Walker's surgery date was pushed back by her medical providers and rescheduled for September 10, 2013.

65. Ms. Walker immediately informed Ms. Hatton of the new surgery date.

66. Ms. Hatton said that she and Ms. Walker would need to sign a new form reflecting the changed dates of her FMLA leave, which they did.

67. Ms. Felton, Ms. Stokes, and, upon information and belief, TAL's owners were aware of the revised approved FMLA dates.

68. Ms. Walker continued to work full-time as the Property Manager of the Mountain Side Inn until she left on surgical leave.

69. Ms. Walker's surgery occurred on September 10, 2013.  She recovered well and was released back to full time work with no restrictions by her medical providers on November 8, 2013—well before the expiration of her 12-week FMLA leave entitlement.

70. Ms. Walker obtained a release to full duty dated November 8, 2013 from her medical providers.

71. Ms. Walker walked over to the Ms. Hatton's office at the River Club (550 Depot Ave.) and left the release form on Ms. Hatton's desk.

72. Ms. Walker also called Ms. Stokes and Ms. Felton to inform them that she was cleared to return to work.

73. Upon information and belief, TAL's owners were informed of Ms. Walker's clearance to return to duty.

74. On or about November 8, 2013, either Ms. Stokes or Ms. Felton told Ms. Walker not to return to work until December 11, 2013, because work was slow at the Aspen Street Inn.

75. Ms. Walker then called Ms. Hatton, who confirmed that she could not return to work until December 11, 2013.

76. Upon information and belief, Defendants Ruggeri, Mallard, Westman, Hatton, Felton, and Stokes all conferred regarding the decision to refuse to allow Ms. Walker to return to work.

77. As a result, Ms. Walker did not receive full time pay from November 7 to December 11, 2013.

78. Nobody at TAL ever requested additional paperwork from Ms. Walker's medical providers or told her that there was any problem with her FMLA paperwork.

79. On December 11, 2013, Ms. Walker returned to work full-time at the Aspen Street Inn with no work restrictions.

80. When Ms. Walker returned, Bruce White had been promoted into the Property Manager position at the Aspen Street Inn, supervising Ms. Walker, and Heather White had been promoted to Property Manager at the Mountain Side Inn.  Bruce White also continued to act as Property Manager for the Manitou Lodge.

81. At the Aspen Street Inn, Ms. Walker's job included new duties she was not required to handle as a Property Manager, including bussing tables in the dining room and washing dishes.

82. Ms. Walker worked from about 6:30 to 11:30 a.m. and then from 4:00 to 7:00 p.m. each day at the Aspen Street Inn, and spent the entire morning shift on her feet.

83. From her return to work until the end of her employment, Ms. Walker successfully performed all requirements of her job.

84. During this same time frame, Ms. Walker was able to perform all requirements of her prior position at the Mountain Side Inn.

85. In February of 2014, fearing that she would be terminated when the Aspen Street Inn closed, Ms. Walker asked her supervisor, Ms. Stokes, to meet with her to discuss her future with the company.

86. On or about February 6, 2014, Ms. Stokes and Ms. Walker met at Ms. Walker's home.

87. Ms. Walker intended to ask Ms. Stokes whether she would be transferred to another position when the Aspen Street Inn closed.

88. However, before she could do so, Ms. Stokes volunteered, "We don't have any other positions for you within the company."

89. Based on this conversation, Ms. Walker knew that her employment with TAL would be terminated when the Aspen Street Inn closed.

90. Ms. Walker and Ms. Stokes also discussed why she had been moved to the Aspen Street Inn in the first place.

91. Ms. Stokes said that Ms. Walker had not done anything wrong and had always performed her job well, but that she and the other decisionmakers thought that Ms. Walker might be planning to "retire and move to Florida."

92. Upon information and belief, this comment referred to a conversation among Defendants Ruggeri, Mallard, Westman, Hatton, Felton, and Stokes.

93. Ms. Walker was shocked, because she had never expressed the slightest desire or intention to retire and did not, in fact, have any plans to do so.

94. Ms. Walker told Ms. Stokes that she had no plans to retire and that she wished the company had not made such a "life-changing assumption" about her.

95. Upon information and belief, Ms. Stokes informed Defendants Ruggeri, Mallard, Westman, Hatton, and Felton of her conversation with Ms. Walker.

96. On or about March 31, 2014, Ms. Walker received a letter from TAL indicating that the Aspen Street Inn would be closing and her position with the company would be ending effective April 6, 2014.

97. On or about April 6, 2014, Ms. Walker's employment with TAL ended.

98. Despite exhaustive efforts, Ms. Walker has been unable to secure full-time employment since her termination.

99. Ms. Walker was demoted, suffered a pay reduction and change in duties, was prohibited from working for over one month, and was ultimately terminated in retaliation for exercising her right to medical leave under the FMLA.

100.    Ms. Walker was demoted, discriminated against in the terms and conditions of her employment, and ultimately terminated because of her disability; because TAL regarded her as disabled; and because of her protected request for an accommodation in the form of medical leave.

101.    Ms. Walker was demoted, discriminated against in the terms and conditions of her employment, and ultimately terminated because of her age.

102.    As a result of Defendants' conduct, Ms. Walker experienced damages including serious emotional distress; years of wage loss; and attorneys' fees and costs.

**FIRST CLAIM FOR RELIEF**
**Retaliation and Interference, FMLA, 29 U.S.C. § 2601 *et seq.***
**(Against All Defendants)**

103.    Plaintiff incorporates by reference and adopts paragraphs 1 through 102 above, as if set forth herein.

104.    Ms. Walker was qualified for and used FMLA leave for her surgery and recovery period.

105.    Ms. Walker had a serious medical condition for purposes of the FMLA.

106.    Ms. Walker was an eligible employee for purposes of the FMLA.

107.    Each Defendant knew of Ms. Walker's serious medical condition, participated in approving Ms. Walker's FMLA leave, and was aware that her leave was protected by the FMLA.

108.    Each Defendant was Ms. Walker's employer for purposes of the FMLA.

109.     TAL was a legal person engaged in commerce and in an industry and in activities affecting commerce, and employed 50 or more employees for each working day during each of 20 or more calendar workweeks in each year from 2009 to the present.

110.     Defendants Ruggeri, Mallard, Westman, Hatton, Felton, and Stokes each acted both directly and indirectly in the interest of TAL vis-a-vis the employees of TAL, including Ms. Walker.

111.     Defendants Ruggeri, Mallard, Westman, Hatton, Felton, and Stokes each had supervisory authority over Ms. Walker, substantial control over the terms and conditions of her employment, and control over her ability to take a leave of absence and return to work.

112.     Each Defendant illegally demoted Ms. Walker, reduced her salary and changed her duties, prevented her from returning from leave when cleared to do so, and ultimately terminated her employment in retaliation for requesting and utilizing medical leave protected by the FMLA.

113.     Each Defendant illegally prevented Ms. Walker from returning to her prior position at the Mountain Side Inn or her post-demotion position at the Aspen Street Inn after her FMLA leave, in interference with her FMLA rights.

114.     Each Defendant's actions described herein were willful, wanton, intentional, and taken in reckless disregard for Ms. Walker's FMLA rights.

115.     Each Defendant knew or should have known of Ms. Walker's right to take FMLA leave and return to her position, and to continue working in that position without retaliation for having taken FMLA leave, but violated her rights despite this knowledge.

116.     As a direct and proximate cause of Defendants' actions and conduct, Ms. Walker suffered and will continue to suffer damages including, but not limited to, loss of salary wages, earnings and benefits; diminution of future earning capacity; loss of accumulated benefits, emotional distress and other compensatory damages in an amount to be determined at trial; liquidated damages; and attorney fees and costs.

## SECOND CLAIM FOR RELIEF
### Disability Discrimination and Retaliation, ADA, 42 U.S.C. § 12101 *et seq.*
### (Against Defendant TAL)

117.     Plaintiff incorporates by reference and adopts paragraphs 1 through 116 above, as if set forth herein.

118.     At the time of her termination, Ms. Walker was a qualified individual with a diagnosed disability of lateral compartment degenerative joint disease.

119.     In the alternative, Ms. Walker was a nondisabled individual who was regarded as disabled by TAL.

120.     Ms. Walker was able to do her job without reasonable accommodation or, in the alternative, with an accommodation of a brief medical leave.

121.     Ms. Walker's lateral compartment degenerative joint disease affected her major bodily functions including her musculoskeletal function, as well as her major life activities including walking.

122.     Defendant TAL knew of Ms. Walker's disability.

123.     In the alternative, Defendant TAL erroneously regarded Ms. Walker as an individual with a disability.

124.     Ms. Walker requested reasonable accommodation of her disability from TAL when she requested medical leave.

125.     Defendant TAL was Ms. Walker's employer within the meaning of the ADA.

126.     Defendant TAL discriminated against Ms. Walker in the terms and conditions of her employment, including by demoting her, reducing her pay, changing her duties, and refusing to allow her to return to work, because of her disability or perceived disability, and in retaliation for her request for an accommodation.

127.     Defendant TAL illegally terminated Ms. Walker because of her disability or perceived disability and in retaliation for her request for accommodation.

128.     By demoting Ms. Walker, reducing her pay, refusing to allow her to return to work, changing her duties, and terminating her employment, TAL took adverse employment actions against her.

129.     Defendant TAL replaced Ms. Walker with a nondisabled employee who was not regarded as disabled and had not requested accommodation of a disability.

130.     Defendant TAL's actions described herein were willful, wanton, intentional, and taken in reckless disregard for Ms. Walker's protected rights and feelings.

131.     Defendant TAL failed to take reasonable care to prevent and to correct the unlawful discriminatory practices described herein.

132.     Ms. Walker attempted to take advantage of preventative and corrective opportunities and policies provided by Defendant TAL in order to avoid the harms described herein.

133.     As a direct and proximate cause of Defendant TAL's discriminatory actions and conduct, Ms. Walker suffered and will continue to suffer damages including,

but not limited to, loss of salary wages, earnings and benefits; diminution of future earning capacity; loss of accumulated benefits, emotional distress and other compensatory damages in an amount to be determined at trial; punitive damages in an amount to be determined at trial; and attorney fees and costs.

<u>**THIRD CLAIM FOR RELIEF**</u>
**Age Discrimination, ADEA, 29 U.S.C. § 621 *et seq*.**
**(Against Defendant TAL)**

134.     Plaintiff incorporates by reference and adopts paragraphs 1 through 133 above, as if set forth herein.

135.     Ms. Walker was at all relevant times over 40 years old and within the class protected by the ADEA.

136.     Defendant TAL is an employer, and was Ms. Walker's employer, for purposes of the ADEA.

137.     Defendant TAL discriminated against Ms. Walker in the terms and conditions of her employment, including by demoting her, reducing her pay, changing her duties, and refusing to allow her to return to work, because of her age.

138.     Defendant TAL illegally terminated Ms. Walker because of her age.

139.     By demoting Ms. Walker, reducing her pay, changing her duties, refusing to allow her to return to work, and terminating her employment, TAL took adverse employment actions against her.

140.     Defendant TAL replaced Ms. Walker with a younger employee.

141.     Defendant TAL's actions described herein were willful, wanton, intentional, and taken in reckless disregard for Ms. Walker's protected rights and feelings.

142.     Defendant TAL failed to take reasonable care to prevent and to correct the unlawful discriminatory practices described herein.

143.     Ms. Walker attempted to take advantage of preventative and corrective opportunities and policies provided by Defendant TAL in order to avoid the harms described herein.

144.     As a direct and proximate cause of Defendant TAL's discriminatory actions and conduct, Ms. Walker suffered and will continue to suffer damages including, but not limited to, loss of salary wages, earnings and benefits; diminution of future earning capacity; loss of accumulated benefits, emotional distress and other compensatory damages in an amount to be determined at trial; punitive and/or liquidated damages in an amount to be determined at trial; and attorney fees and costs.

**FOURTH CLAIM FOR RELIEF**
**Age and Disability Discrimination & Retaliation, CADA, C.R.S. §§ 24-34-401 *et seq*.**
**(Against Defendant TAL)**

145.     Plaintiff incorporates by reference and adopts paragraphs 1 through 144 above, as if set forth herein.

146.     As set forth in Ms. Walker's claims for relief under the ADA and ADEA, at all relevant times she was a disabled individual over the age of 65 who was employed by TAL and was qualified for and able to perform her position.

147.     As set forth in Ms. Walker's claims for relief under the ADA and ADEA, TAL was Ms. Walker's employer, and took adverse actions against Ms. Walker by demoting her, reducing her pay, changing her job duties, refusing to allow her to return to work, and ultimately terminating her, because of her age, her actual or perceived disability, and her request for accommodation of a disability.

148.    As a direct and proximate cause of Defendant TAL's discriminatory actions and conduct, Ms. Walker suffered damages including, but not limited to, loss of salary wages, earnings and benefits.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff respectfully prays that this Court grant the following relief:

A.  damages in such amount as will be proven at trial for back pay, and for lost benefits, wages, bonuses, promotions, tenure, seniority and other employment opportunities;

B.  an order to reinstate Ms. Walker or, in the alternative, an award of front pay and benefits;

C.  compensatory damages, including for emotional distress, as allowed by law;

D.  punitive, exemplary and liquidated damages as allowed by law;

E.  attorney fees and costs as allowed by law;

F.  injunctive relief prohibiting Defendants from future discriminatory and illegal practices as described herein and requiring Defendants to adopt policies and procedures to eradicate the effects of past discriminatory and illegal practices; and

G.   pre- and post-judgment interest, costs, expert witness fees, and such other and further relief as this Court deems proper.

## JURY TRIAL DEMAND

The plaintiff hereby requests a jury trial on all questions of fact raised by this Complaint.

Respectfully submitted this 4th day of November, 2015.

LOWREY PARADY, LLC

_____s/ Sarah J. Parady_____
Sarah J. Parady
Mary Jo Lowrey
1725 High Street, Suite 1
Denver, CO 80211
Phone: 303-593-2595
Fax: 303-502-9119
Email: Sarah@lowrey-parady.com
        MaryJo@lowrey-parady.com

*Attorneys for Plaintiff*

Plaintiff's Address:
651 W. Pacific Ave.
Telluride, CO 81435